IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH D. MASTARONE,                )
                                    )
            Plaintiff,              )
                                    )
    -vs-                            )    Civil Action No. 16-1421
                                    )
NANCY A. BERRYHILL,[1]              )
COMMISSIONER OF SOCIAL SECURITY,    )
                                    )
            Defendant.               )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Background

Plaintiff Joseph D. Mastarone ("Mastarone") brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) for review of the ALJ's decision denying of his claim for supplemental security income (SSI) and disability insurance benefits ("DIB") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-34, 1381-1383f. Mastarone alleges a disability beginning on March 1, 2009, based upon both physical and mental impairments. (R. 10) Following a hearing before an ALJ, during which both Mastarone and a vocational expert ("VE") testified, the ALJ denied his claims. The ALJ concluded that Mastarone had the residual functional capacity ("RFC") to perform light work with several restrictions. (R. 17) Mastarone appealed. Pending are Cross Motions for Summary Judgment. *See* ECF Docket Nos. [11] and [16]. After careful consideration, the case is affirmed.

### Legal Analysis

---

[1] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.

1

1. Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as Amore than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate. *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the claimant must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986). The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P, appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience, and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id. A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

    2. <u>Medical Opinion Evidence</u>

Mastarone takes issue with the ALJ's assessment of the medical opinions. The amount of weight accorded to medical opinions is well-established. Generally, the ALJ

will give more weight to the opinion of a source who has examined the claimant than to that of a non-examining source. 20 C.F.R. § 416.927(c)(1). Additionally, the ALJ typically will give more weight to opinions from treating physicians, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from the reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. *Id.* If a treating physician's opinion is not given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient / physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue. 20 C.F.R. § 416.927(c)(1)-(6). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." 20 C.F.R. § 416.927(c)(4). In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-

4

examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. 416.927(c)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Soc. Sec.*, 403 Fed. Appx. 679, 686 (3d Cir. 2010).

The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide. Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work." *See* 20 C.F.R. § 416.927(d)(1), (3); *Dixon v. Comm'r. of Soc. Sec.*, 183 Fed. Appx. 248, 251-52 (3d Cir. 2006) (stating, "[o]pinions on disability are not medical opinions and are not given any special significance."). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r. of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r. of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008). "It is not for this Court to reweigh the medical opinions in the record but rather to determine if there is substantial evidence to support the ALJ's weighing of those opinions." *Lilly v. Colvin*, Civ. No. 13-1561, 2016 WL 1166334 (D. Del. March 23, 2016), *citing, Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).

After careful consideration, I reject Mastarone's contention that the ALJ "failed to evaluate the medical opinion evidence in accordance with the regulations, Agency policy and Third Circuit precedent." *See* ECF docket no. 12, p. 3. A thorough review of the evidence convinces me that the ALJ adhered to the appropriate standards. He expressly indicated that he considered the factors in accordance with the requirements of 20 C.F.R. 404.1527, 404.1529 and 416.927 and 416.929 and SSRs 96-2p, 96-3p, 96-4p, 96-5p, 96-6p, 96-6p, and 96-7p. (R. 17) Further it is clear that he discussed Mastarone's treatment records and the relevant medical opinions, including those relating to Dr. Goetz, Dr. Muthappan, and Dr. Kennedy. (R. 17-25) Consequently, contrary to Mastarone's assertions, the ALJ clearly was aware of and implicitly if not explicitly noted the length and nature of those relationships as well as the physicians' particular specialties. (R. 17-25) He also clearly articulated particular reasons for the weight given to Dr. Goetz's, Dr. Muthappan's, and Dr. Kennedy's opinions. (R. 17-25) For example, the ALJ explained: that the opinions were inconsistent with the objective medical findings; they were undermined by the fact that Dr. Goetz "considered the claimant's substance dependencies to be in remission as of May 30, 2014, when, alternatively, the record indicates that the claimant was using Klonopin earlier that month" (R. 24); that Mastarone had a "completely normal objective exam" with Dr. Muthappan; and that Dr. Kennedy noted a GAF of 65 and essentially normal exam findings. (R. 25) These are entirely appropriate and valid reasons for discounting opinions. See 20 C.F.R. § 404.1527 and § 416.927 (evaluating opinion evidence). Thus, the ALJ's decision to accord these opinions reduced weight is well supported by case law.

### 3. Intellectual Disability as Defined in Listing 12.05C

As stated above, at the third step of the sequential analysis, the ALJ is tasked with determining whether the claimant's impairment(s) meet or equal the criteria listed in 20 C.F.R. pt. 404, subpt. P, appx. 1. See 20 C.F.R. § 416.920(a)(4)(iii). "If the impairment is equivalent to a listed impairment, then [the claimant] is *per se* disabled and no further analysis is necessary." *Burnett v. Comm'r. of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000). Here, Mastarone insists that he meets the definition of Listing 12.05. Listing 12.05 states, in relevant part:

> 12.05 Intellectual Disability: intellectual disability refers to significantly subaverage general intellectual function with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> …
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. § 404, subpt. P, app. 1, 12.05 (2015).[2]

The ALJ rejected Mastarone's contention that he satisfied 12.05C. The ALJ found:

> As for Listing 12.05 "paragraph B" and "Paragraph C" criteria, they are not met because the claimant does not have valid verbal, performance, or full scale IQ scores of 59 or less or scores of 60 through 70. Although the claimant's representative argued that the claimant's IQ is 65 based upon his school records, this remote score was merely noted on a standard test record sheet from Burrell Senior High School and was without accompanying documentation to establish its validity. (Exhibit B10E, B11E). Even if I would accept that distant IQ score, the

---

[2] On September 26, 2016, the SSA issued Revised Medical Criteria for Evaluating Mental Disorders, Final Rule, which amended listing 12.05. 81 Fed. Reg. 66138. The amendment does not impact this case. The Final Rule provides that "[w]e expect that Federal Courts will review our final decision using the rules that were in effect at the time we issued the decisions." *Id.* at n. 1. The rule set forth above was in effect at the time the ALJ issued his decision.

7

> substantial evidence of record fails to indicate that the capsule definition of Listing 12.05 has been satisfied, namely that the claimant manifested deficits in *adaptive functioning* prior to attaining age 22.

(R. 16) (footnote omitted) (emphasis in original). According to Mastarone, the ALJ's decision on this issue is erroneous in two respects: (1) the ALJ improperly rejected Mastarone's IQ score as "too distant"; and (2) the ALJ erred in finding that Mastarone failed to meet the "capsule" definition of § 12.05C. Even accepting, for purposes of argument only, that the ALJ improperly rejected the IQ score, remand is not warranted. I find that substantial evidence of record supports the ALJ's conclusion that Mastarone did not manifest deficits in adaptive functioning prior to attaining age 22.

As an initial matter Mastarone appears to argue that he need not demonstrate "deficits in adaptive functioning." He cites to the decision rendered in *Markle v. Barnhart*, 324 F.3d 182, 187 (3d Cir. 2003) for the proposition that a claimant need only demonstrate an IQ of 60 through 70; a physical or mental impairment imposing additional and significant work-related limitations of function; and that such deficits manifested prior to the age of 22. See ECF docket no. 12, p. 17. According to Mastarone, no additional requirements for meeting Listing 12.05C have ever been imposed by the Third Circuit Court of Appeals.[3] He does not address the substantial case law, including Third Circuit decisions, which seem to require proof of deficits in adaptive functioning. In *Gist v. Barnhart*, 67 Fed. Appx. 78 (3d Cir. 2003) the Third Circuit court held that "[a]s is true in regard to any 12.05 listing, before demonstrating

---

[3] Mastarone cites to *Illig v. Comm'r. of Soc. Sec.*, Civ. No. 13-4596, 570 Fed. Appx. 262, n. 8 (3d Cir. 2014) for the proposition that the Court reiterated the *Markle* analysis. Yet the Third Circuit Court specifically stated "[t]he parties dispute whether a claimant must also meet a fourth requirement – showing deficits in adaptive functioning – in order to meet or equal Listing 12.05C. But we need not reach this issue because the ALJ erred in determining that *Illig* failed to meet the IQ requirement for Listing 12.05C and made no findings on whether *Illig* demonstrated deficits in adaptive functioning." *Id*. at 265, n. 8. Consequently, I do not find the citation to the *Illig* decision to be persuasive.

8

the specific requirements of Listing 12.05C, a claimant must show proof of a 'deficit in adaptive functioning' with initial onset prior to age 22." *Gist*, 67 Fed. Appx. at 81. I reject Mastarone's argument and follow the well-settled law in this Circuit that a claimant must show proof of deficits in adaptive functioning with initial onset prior to the age of 22. *See Lansdowne v. Astrue*, Civ. No. 11-487, 2012 WL 4069363 at * 4 n. 4 (W.D. Pa. Sept. 17, 2012) (stating that "[a]lthough not specifically mentioning the need to establish 'deficits in adaptive functioning,' *Markle* did expressly hold that a claimant must show 'mental retardation' manifested before age 22, and Listing 12.05 explicitly states that 'mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning.' Accordingly … *Markle* is wholly consistent with the subsequent decisions in *Gist* … as well as with the clear and unequivocal pronouncement made in the explanatory notes to the mental disorder listings in 12.00A."); *Demacio v. Comm'r. of Soc. Sec.*, Civ. No. 12-1313, 2014 WL 1278086 at * 12 (W.D. Pa. March 27, 2014) (stating that "the Court finds that it is now well settled in this Circuit that the third prong of the *Markle* test requires a claimant to show "'deficits in adaptive functioning' with an onset prior to the age of 22" in addition to an IQ score with one of the required ranges of severity."); *Cruz v. Colvin*, Civ. No. 15-1639, 2016 WL 1091347 at * 10 (D. N.J. March 21, 2016) (stating that "before turning to the specific requirements of Listing 12.05C .. .the plaintiff must demonstrate deficits in adaptive functioning prior to age 22") (internal quotation marks omitted); *Davis v. Colvin*, Civ. No. 16-112, 2017 WL 1198381 at * 6 (W.D. Pa. March 30, 2017); and *Rhome v.Colvin*, Civ. No. 15-754, 2016 WL 4735573 at *4 n. 8 (W.D. Pa. Sept. 9. 2016).

9

As recognized in *Logan v. Astrue*, 2008 WL 4279820 (W.D. Pa. 2008), the Social Security regulations do not define "deficits of adaptive functioning" nor do they set forth standards against which a claimant's alleged deficits must be measured. The Social Security regulations do not provide either "a definition of 'deficits in adaptive functioning' [or] standard or guidelines by which to assess and measure the existence or severity of a claimant's alleged 'deficits.'" *Logan*, 2008 WL 4279820 at * 8. Nonetheless, as explained in *Logan*, "in order to properly assess a claimant's alleged mental retardation to determine if deficits in adapative functioning exist, according to the Social Security Administration, an ALJ should consult either the APA's Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), the standard set forth by the AAMR, or the criteria of the other major mental health organizations." *Id.*, at * 8. (footnote omitted).

Here, the ALJ consulted the DSM Fifth Addition noting that it describes adaptive functioning as:

> How well a person meets community standards of personal independence and social responsibility, in comparison to others of a similar age and sociocultural background. This adaptive functioning assessment requires the evaluation of three domains: (1) Conceptual, which includes skills in language, reading and writing, math reasoning, acquiring practical knowledge and problem solving; 2) Social, which includes empathy, interpersonal communication, social judgment, and making and keeping friends; and 3) Practical, which includes personal care, money management, school and work task organization, and meeting job responsibilities.

(R. 16) Mastarone does not dispute that this is an appropriate methodology for assessing deficits in adaptive functioning. Rather, he contends that the ALJ "provides literally no discussion of how he arrived" at the conclusion that Mastarone failed to satisfy the 'deficits in adaptive functioning'" test. ECF docket no. 12, p. 19. I disagree. The ALJ clearly details his reasoning. As to "conceptual" – the ALJ noted that, although

Mastarone withdrew from school in the 8th grade at the age of 17, there was no indication that that he required special education support and he "acknowledged the ability to read and understand English, write more than his name in English, and count change." (R. 16) The ALJ further observed that Mastarone's vocabulary was deemed "fair." (R. 16-17) Furthermore, he maintained "skilled work as a mechanic" for five years. (R. 16) As to "social skills," the ALJ found that Mastarone demonstrated empathy, interpersonal communication, and social skills by virtue of his relationships with his girlfriend and family." (R. 17) With respect to "practical" considerations, the ALJ noted that Mastarone was "able to perform a full range of activities of daily living including caring for his personal needs, preparing simple meals, shopping by phone, watching television, and utilizing public transportation." (R. 17) This satisfies the "substantial evidence" standard. *See Harper v. Colvin*, Civ. No. 13-446, 2014 WL 1278094 at * 8 (W.D. Pa. March 27, 2014) (affirming the ALJ's conclusion that the claimant did not have deficits in adaptive functioning where she completed high school, worked in jobs requiring some skill prior to the alleged onset date, managed her own finances, drove, cared for herself, shopped for groceries, and raised two sons); *Gibbs v. Comm'r. of Soc. Sec.*, Civ., No. 16-16445, 2017 WL 1501082 at * 2-3 (11th Cir. April 27, 2017) (stating that substantial evidence supports the ALJ's finding that the claimant does not satisfy listing 12.05C because she lacks the deficits in adaptive functioning where she lived alone at times and, with her mother's help, cared for her daughter, did her own laundry, cleaned her home, cooked simple meals, had her driver's license, handled her own money, was able to shop, and received several passing grades in special education classes in 9th and 10th grades). Consequently, there is no basis for remand.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSEPH D. MASTARONE )
    Plaintiff, )
)
-vs- ) Civil Action No. 16-1421
)
NANCY A. BERRYHILL,[4] )
COMMISSIONER OF SOCIAL SECURITY, )
)
    Defendant. )

AMBROSE, Senior District Judge.

# ORDER OF COURT

Therefore, this 8th day of February, 2018, it is hereby ORDERED that the decision of the ALJ is affirmed. It is further ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 11) is DENIED and Defendant's Motion for Summary Judgment (Docket No. 16) is GRANTED.

                                               BY THE COURT:

                                               /s/ Donetta W. Ambrose
                                               Donetta W. Ambrose
                                               United States Senior District Judge

---

[4] Nancy A. Berryhill became acting Commissioner of Social Security on January 23, 2017, replacing Carolyn W. Colvin.